

# The Attorney General of Texas

March 23, 1983

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

1607 Main St., Suite 1400
Dallas, TX. 75201-4709
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

.220 Dallas Ave., Suite 202
Houston, TX. 77002-6986
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Joe C. Hanna
Chairman
Energy Resources Committee
Texas House of Representatives
P. O. Box 2910, Capitol Station
Austin, Texas    78769

Opinion No. JM-18

Re:  Whether House Bill No. 226
relating to reporting ownership
of mineral interests severed
from surface estate and to
proceedings for abandonment of
unreported mineral interests
violates article I, section 19
of the Texas Constitution

Dear Representative Hanna:

You have requested our opinion regarding the constitutionality of House Bill No. 226, presently pending before the Sixty-eighth Legislature. The bill provides:

> Section 1. Policy. The purpose of this Act is to assure that productive use of mineral reserves and natural resources will not be prevented by the existence of abandoned mineral interests.
>
> Section 2. Definitions. In this Act:
>
> (1) 'Abandonment' means actual and voluntary relinquishment of an interest in minerals that is intended to be permanent, by the owner of the interest.
>
> (2) 'Mineral interest' means an interest in minerals in place that is severed from the ownership of an interest in the surface, and includes a fee interest, whether conditional or not, executive right, royalty interest, life estate, estate for years, remainder, reverter, possibility of reverter, leasehold, or any other present possessory interest, future interest, equitable interest, or concurrent ownership interest.

(3) 'Interest in the surface' means a fee interest, whether conditional or not, from which a mineral interest has been severed.

(4) 'Person' means a natural person, corporation, business trust, estate, trust, partnership, or association.

(5) 'Surface owner' means a person who has concurrent or sole legal right or title, except the holder of a leasehold or an estate for years, to a present interest in real property from which a mineral interest has been severed.

Section 3. Report of Ownership of Mineral Interest. (a) A person who owns a mineral interest on September 1, 1983, must file a report with the county clerk of each county in which part of the interest is located before September 1, 1984. A person who acquires or creates a mineral interest after September 1, 1983, must file a report with the county clerk of each county in which part of the interest is located before the first anniversary of the date the person acquires or creates the interest.

(b) The report must be subscribed and acknowledged in the same manner as is required for a deed and must contain:

(1) the name and address of the person claiming the interest;

(2) the date the person acquired or created the interest;

(3) a legal description of the interest; and

(4) a general description of the nature of the interest.

Section 4. Recording of Reports. (a) A county clerk may charge the same filing fee for recording a report under this Act as is authorized for recording a deed.

(b) Each county clerk shall maintain a public record of reports filed under this Act separately from other records in the clerk's office. The

clerk shall keep the record in the same manner as is required for deeds.

Section 5. Effect of Failure to Report. An owner of a mineral interest who does not file the report required by this Act is presumed to have abandoned the interest, and title to the interest is presumed to belong to the surface owner.

Section 6. Judicial Proceeding. A surface owner may file a petition for declaratory judgment in the district court of the county in which the real property is located, requesting the court to declare a mineral interest abandoned.

Section 7. Notice of Proceeding. In an action for declaratory judgment under this Act, citation shall be issued to the last known owner or owners of the abandoned mineral interest as shown by the official records of the county clerk of the county where the property is located and shall be served in accordance with the Texas Rules of Civil Procedure.

Section 8. Evidence of Nonabandonment. A mineral interest is not abandoned if the owner of the interest appears at the abandonment proceeding or if the owner files the report required by this Act before the court renders a judgment declaring the interest abandoned.

Section 9. Vesting of Title. (a) If a court declares that a mineral interest is abandoned, title to the interest vests in the current owner or owners of the surface interest from which it was severed, with each owner taking the same share and the same type of ownership in the mineral interest as the person has in the surface.

(b) A person who acquires title to a mineral interest in an abandonment proceeding under this Act may record in the same manner as a deed a certified copy of the judgment as evidence of title.

Section 10. Applicability. This Act does not apply to a mineral interest owned by a governmental body or agency.

For the following reasons, we conclude that House Bill No. 226 is unconstitutional under the due process clauses of the United States and Texas Constitutions.  We do not reach the question of whether the bill is unconstitutional in other respects.

The fourteenth amendment to the United States Constitution provides that no state may "deprive any person of life, liberty, or property without due process of law."  Article I, section 19 of the Texas Constitution provides that no citizen of Texas shall be deprived of life, liberty, or property "except by due course of the law of the land."  These guarantees are essentially synonymous.  Mellinger v. City of Houston, 3 S.W. 249, 252 (Tex. 1887).

Courts utilize a two-step analysis to determine whether a person has been deprived of life, liberty, or property without due process of law.  First, the court decides whether a constitutionally cognizable life, liberty, or property interest exists.  If it finds that such an interest does exist, it then decides what procedures constitute "due process of law" under the circumstances and whether those procedures have been followed.  Ingraham v. Wright, 430 U.S. 651, 672 (1977); Sullivan v. University Interscholastic League, 599 S.W.2d 860, 863 (Tex. Civ. App. - Austin 1980), aff'd in part, rev'd in part, 616 S.W.2d 170 (Tex. 1981).

In Texas, due process attaches to vested property rights in mineral estates.  Brown v. Humble Oil and Refining Company, 83 S.W.2d 935 (Tex. 1935).  Therefore, our due process analysis of House Bill No. 226 must focus on the second step in the two-step process.  The requirements of both procedural and substantive due process must be satisfied.  Eggemeyer v. Eggemeyer, 554 S.W.2d 137, 140 (Tex. 1977).

At a minimum, procedural due process requires that a deprivation of life, liberty, or property by adjudication be preceded by notice and opportunity for a hearing appropriate to the nature of the case.  Mullane v. Central Hanover Bank & Trust Company, 339 U.S. 306, 314 (1950).  "Due course of the law of the land" requires a law that hears before it condemns, proceeds upon inquiry, and renders judgment only after trial.  Union Central Life Insurance Company v. Chowning, 26 S.W. 982, 984 (Tex. 1894).  The right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner.  Fuentes v. Shevin, 407 U.S. 67, 80 (1972).  The notice must be reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.  The notice must also afford a reasonable time for preparation.  Constitutional requirements, however, are satisfied if, with due regard for the practicalities and peculiarities of the case, these conditions are reasonably met.  Mullane, supra, at 313-18.

Section 7 of House Bill No. 226 provides for notice to certain mineral interest owners that a declaratory judgment proceeding has been instituted by the owner of the surface estate to have the court declare the mineral interest abandoned. The notice is to be issued to the last known owner or owners of the mineral interest as shown by the official records of the county clerk where the property is located and is to be served in accordance with the Texas Rules of Civil Procedure. On the other hand, the notice procedure fails to provide for service of citation to known owners not of record and to unknown owners.

In Texaco, Inc. v. Short, 454 U.S. 516 (1982), the United States Supreme Court dealt with an Indiana statute which was somewhat similar to House Bill No. 226. This statute, the Indiana Dormant Mineral Interests Act, provided that a severed mineral interest not used for a period of twenty years automatically lapsed and reverted to the owners of the surface estate unless the mineral interest owner had filed a statement of claim in the local county recorder's office. The statute contained a two-year grace period in which owners of mineral interests subject to lapse might preserve those interests by filing the statement of claim. The purpose of the statute, as articulated by the Indiana Supreme Court, was to remove impediments to the development of mineral interests that arose because of the existence of unused, stale, and abandoned mineral interests.

One of the arguments made in Short was that the statute's notice provisions were constitutionally infirm because they did not require that any specific notice be given to a mineral owner prior to a statutory lapse of a mineral estate. Relying on Mullane v. Central Hanover Bank and Trust Company, surpa, the appellants contended that the lack of adequate notice deprived them of due process of law. The Supreme Court disagreed, however, stating:

> The reasoning in Mullane is applicable to a judicial proceeding brought to determine whether a lapse of a mineral estate did or did not occur, but not to the self-executing feature of the Mineral Lapse Act. The due process standards of Mullane apply to an 'adjudication' that is 'to be accorded finality.' (Emphasis added).

454 U.S. at 535. The Court concluded that because the lapse of a mineral estate resulted, not from a judicial proceeding, but from the application of a self-executing statute, the existence of which everyone was presumed to be aware, the notice provisions of the statute were not constitutionally deficient.

The feature that distinguishes House Bill No. 226 from the Indiana statute is that, under the former, a mineral interest is lost only after a judicial proceeding. Even if one concedes that everyone

would, after House Bill No. 226 becomes effective, be presumed to be aware of its existence, one cannot conclude that everyone is presumed to be aware of the pendency of a judicial proceeding initiated under it.   On the contrary, Mullane establishes that those who may be affected by the outcome of such a proceeding must be given such notice as is reasonably calculated to inform them of its pendency.

We do not believe that the notice provisions of House Bill No. 226 are reasonably calculated to apprise everyone who might be affected by a suit instituted thereunder of the pendency of that suit. As noted, these provisions fail to provide for any kind of notice, even notice by publication, to known owners not of record and to unknown owners.   To take away the mineral interests of owners who are not served with any citation whatsoever would, in our opinion, clearly deprive those owners of due process of law.

Although the lack of adequate notice provisions is sufficient to invalidate House Bill No. 226 on procedural grounds, we believe that the bill also violates substantive due process.   In determining whether substantive due process requirements are met, courts balance the gain to the public welfare resulting from the legislation against the severity of its effect on personal and property rights.   A law violates substantive due process when it is arbitrary or unreasonable, i.e., if the social necessity of the law is not a sufficient justification for restricting the rights involved. In the Interest of B-M-N, 570 S.W.2d 493, 503 (Tex. Civ. App. - Texarkana 1978, no writ).

In Texaco, Inc. v. Short, supra, the United States Supreme Court held that the Indiana act met the constitutional requirements of due process.   In reaching its conclusion, the Supreme Court stated:

> [J]ust as a State may create a property interest that is entitled to constitutional protection, the State has the power to condition the permanent retention of that property right on the performance of reasonable conditions that indicate a present intention to retain the interest.

Id., at 526.   The Court concluded that Indiana had not exercised this power in an arbitrary manner because each of the actions that the state required the mineral interest owner to take in order to avoid abandonment of his interest furthered a legitimate state goal.   If the owner engaged in production, or collected rents or royalties from another person engaged in production, his interest was protected; this furthered the state's goal of developing mineral interests.   If the mineral interest owner paid taxes, his interest was protected; this furthered the fiscal interests of the state.   If the mineral interest owner filed a statement of claim, his interest was protected; this furthered the state's goal of developing mineral interests by

identifying and locating the owners of the mineral interests. "The State surely has the power to condition the ownership of property on compliance with conditions that impose such a slight burden on the owner while providing such clear benefits to the State." Id., at 529-30.

In our opinion, House Bill No. 226 is clearly distinguishable from the Indiana act. Under the latter, non-use for twenty years raises an irrebuttable presumption of abandonment, while House Bill No. 226 allows only a one-year period in which the mineral interest owner must file a statement of claim or suffer the institution of a judicial proceeding on the issue of abandonment can be instituted. It is conceivable that a court, when faced with a substantive due process challenge to House Bill No. 226, could rely on this time period difference to distinguish the holding in Short. More importantly, however, the two acts are distinguishable in terms of the conclusions that they permit. Under the Indiana act, it was the lack of any use of a mineral interest for a period of 20 years that resulted in the irrebuttable presumption of abandonment of the interest. Even if there were such lack of use, the owner of the interest could still retain it by filing a statement of claim. Under House Bill No. 226, on the other hand, it is only the failure to file a required report that creates the presumption that the interest has been abandoned. Whereas the Court in Short found, in effect, that it was not unreasonable to conclude that an owner of a mineral interest had abandoned that interest where he did nothing for a twenty-year period to indicate his intent to retain it, we believe that our courts would be loathe to find intent to abandon where the only evidence of such intent is the failure to file a particular report.

The legislature may provide, as a rule of evidence for a judicial proceeding, that certain facts will raise a presumption of other facts, and such presumptions do not deny due process if there is a rational evidentiary relationship between the proven facts and those presumed. See Mobile, Jackson & Kansas City Railroad Company v. Turnipseed, 219 U.S. 35 (1910) (injury to persons by operation of railroad is prima facie evidence of negligence). Clem v. Evans, 291 S.W. 871, 872 (Tex. Comm'n App. 1927, holding adopted) (presumption that promises to do future acts, made as inducement to enter into contract and not performed within reasonable time, were fraudulently made). In our opinion, a presumption of abandonment cannot rationally arise from the fact that a property owner fails to file a report within a one year period. Such a presumption disregards other evidence relevant to abandonment, such as payment of taxes or efforts to produce minerals occurring shortly before the one year period. Compare Attorney General Opinion M-821 (1971) (presumption of abandonment of mineral estate arises from failure for twenty years to pay taxes, transfer estate, or explore for or produce minerals).

In Lobley v. Gilbert, 236 S.W.2d 121 (Tex. 1951), the Texas Supreme Court stated:

> A presumption is a rule which 'draws a particular inference as to the existence of one fact, not actually known, arising from its usual connection with other particular facts which are known or proved.'. . . It is founded upon and must conform to the commonly accepted experiences of mankind. . . . It must be based upon an established fact and cannot rest upon a presumed fact. (Emphasis added). (Citations omitted).

236 S.W.2d at 123, quoted in Beck v. Sheppard, 566 S.W.2d 569, 571 (Tex. 1978). We do not believe that a valid presumption of intent to abandon a mineral interest may arise under this test where the only fact giving rise to the presumption is the failure to file a particular document.

We therefore conclude that House Bill No. 226 is unconstitutional on substantive due process grounds. We believe, however, that there are methods of dealing with the problem of abandoned mineral interests which comport with the requirements of the constitution. See generally Texaco, Inc. v. Short, 454 U.S. 516 (1982), V.T.C.S. arts. 3272-3289 (escheat statutes).

In closing, we note that either of these problems is sufficient to invalidate House Bill No. 226. Their impact in combination is even more offensive to the due process clause. To couple defective notice provisions with a defective presumption is, in our opinion, to produce too much weight for the scales of justice to withstand.

## S U M M A R Y

House Bill No. 226 relating to proceedings for abandonment of unreported mineral interests is unconstitutional under the due process clauses of the United States and Texas Constitutions.

Very truly yours,

JIM MATTOX
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

Prepared by Jon Bible
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
Carl Glaze
Jim Moellinger
Bruce Youngblood